IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOY RENEE GRIMES ) | |
| ) | |
| Plaintiff, ) | Case No. 3:12-cv-1231 |
| ) | Judge Aleta A. Trauger |
| v. ) | |
| ) | |
| MIDDLE TENNESSEE HOSPITALISTS, ) | |
| PLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The defendant Middle Tennessee Hospitalists, PLC ("MTH") has filed a Motion for Summary Judgment with a supporting memorandum (Docket Nos. 18-19), to which the plaintiff has filed a response in Opposition (Docket No. 21), and the defendant has filed a Reply (Docket No. 24). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND[1]

### I. Overview

MTH is a medical care provider chiefly managed by Dr. Murray Arons, a pulmonologist and critical care physician. MTH provides in-patient care to patients hospitalized at Skyline Medical Center in Nashville, Tennessee. Plaintiff Joy Renee Grimes worked for MTH as a nurse practitioner between April 2011 and May 14, 2012, when she was terminated. She claims that

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 20), the plaintiff's responses thereto (Docket No. 22), and the exhibits filed in support of the parties' submissions (Docket Nos. 15-17, 23). The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

MTH discriminated against her on the basis of race in violation of the Tennessee Human Rights Act, T.C.A. §§ 4-21-101 *et seq.* ("THRA"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981").

## II. Factual Background

Grimes, an African-American, received her advance practice nurse certificate in April 2011. This certificate qualified her to work as a nurse practitioner. Shortly thereafter, Dr. Arons hired Grimes as a nurse practitioner at MTH. During her employment, Grimes worked as one of two nurse practitioners at MTH. The other nurse practitioner, Melissa Loyd, is Caucasian. Loyd received her advance practice nurse certificate in 2004 and has worked as a nurse practitioner since that time. As of June 2013, Loyd was still employed by MTH. (Docket No. 16 ¶ 2.) Loyd suffers from multiple sclerosis ("MS"), a chronic disease that affects the nervous system. At some point during the time that Grimes and Loyd worked together, Loyd informed Grimes that she suffered from MS. For purposes of this motion, the parties agree that, prior to the filing of this lawsuit, MTH was unaware of the fact that Loyd suffered from MS.

### A. Grimes' Medical Condition

In March 2012, Grimes suffered a stroke. The stroke was initially undiagnosed, but as a result of her condition, Grimes experienced mental or physical episodes that impaired her cognitive functions. She returned to work at MTH in early April 2012.

Grimes left work again on April 21, 2012 to be hospitalized for the treatment of her condition. Grimes was absent from work for approximately twenty-three days, until May 14, 2012, when MTH terminated her employment. During her absence, Grimes did not submit any plan or expected date to MTH for her return to work after her last day on April 21, 2012. Grimes

2

similarly failed to present MTH with a release from a physician indicating that she was fit to return to work.

MTH asserts that it fired Grimes on May 14, 2012 because her medical condition rendered her unable to do her job and, therefore, jeopardized the care and safety of MTH's patients. A termination letter sent by Dr. Arons to Grimes states:

> Per our discussion of 5/14/12 it is unfortunate that we had to terminate you [*sic*] employment with Middle Tennessee Hospitalist. Due to multiple episodes of altered mental status that impaired your cognitive function patient safety had become a significant concern. Middle Tennessee Hospitalist are [*sic*] contracted to provide services for Skyline Medical Center, LLC. Administrative officials for Skyline Medical Center had raised concerns about patient safety related to these episodes during which you were not able to properly fulfill your duties and as such were no longer comfortable in you doing so.

(Docket No. 22 ¶ 16.) Grimes alleges that her termination was a product of racial discrimination. On October 31, 2012, Grimes filed suit under the THRA and Section 1981 in the Chancery Court for Davidson County in Nashville, Tennessee.

### III. **Procedural Background**

MTH removed the lawsuit to this court pursuant to 28 U.S.C. § 1441 on November 9, 2012. On November 30, 2012, MTH answered the Complaint. MTH subsequently filed the pending motion for summary judgment on July 12, 2013. In support of its motion, MTH submitted declarations from Dr. Arons and Loyd and a statement of undisputed facts. (Docket Nos. 15-16, 20.) Additionally, MTH submitted its Requests for Admission ("RFAs") sent to the plaintiff and dated March 18, 2013. Pursuant to Rule 36 of the Federal Rules of Civil Procedure,

these requests for admission are deemed admitted because the plaintiff and/or her counsel failed to respond to the RFAs within 30 days after being served.[2] (*See* Docket No. 17, Exs. A-B.)

In its motion, MTH argues that summary judgment is appropriate because the plaintiff fails to demonstrate the elements of a *prima facie* disparate treatment claim under the THRA and Section 1981. Specifically, MTH contends that Grimes and Loyd are not "similarly situated" under the law. Moreover, MTH argues that, even if Grimes had set forth a *prima facie* case of discrimination, she has offered no evidence of pretext to rebut MTH's non-discriminatory reason for her dismissal.

In a scant response, Grimes opposed MTH's motion and asserted that there are disputed issues of material fact sufficient to preclude summary judgment. (Docket No. 21.) With its opposition, the plaintiff filed a response to the defendant's statement of undisputed facts and a declaration from Grimes. (Docket Nos. 22-23.) MTH filed a Reply in response to Grimes' opposition that substantially restated the arguments set forth in its motion. (Docket No. 24.)

## ANALYSIS

**I.    Rule 56 Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th

---

[2] The plaintiff does not dispute that these requests for admission are deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3).

4

Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.     Disparate Treatment Standard

Grimes' Section 1981 and THRA claims are analyzed identically to claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Newman v. Federal Express Co.*, 266 F.3d 401, 406 (6th Cir. 2001). To establish a *prima facie* case for a Title VII employment "discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.,* 319 F.3d 858, 864-65 (6th Cir. 2003). If a plaintiff relies on circumstantial evidence to present her claim, the court applies the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007); T.C.A. § 4-21-311(3) (2013) (expressly instructing that civil actions under the THRA are to be analyzed under a burden-shifting scheme identical to the

5

*McDonnell Douglas* standard); *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 757 (6th Cir. 2012); *Bryant v. Rolling Hills Hosp., LLC*, No. 10-cv-0922, 2011 WL 6339994 (M.D. Tenn. Dec. 15, 2011). Here, Grimes has failed to submit any evidence of direct discrimination. Accordingly, the court will limit its analysis to any indirect evidence of racial discrimination submitted by the plaintiff.

### A. Indirect Evidence of Racial Discrimination

Pursuant to the *McDonnell Douglas* framework, Grimes must first produce evidence to establish a *prima facie* case of racial discrimination. *Caterpillar*, 496 F.3d at 593. To do so, she must demonstrate that (1) she is a member of a protected class; (2) she was qualified for [her] position; (3) she was subject to an adverse employment action; and (4) she was treated differently than [similarly situated] employees outside the protected class for the same or similar conduct. *Id.*

If the plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Clay v. United Parcel Serv.*, 501 F.3d 695, 704 (6th Cir. 2007). To meet this burden, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for its decision. *Id.*; *see also Berry v. City of Pontiac*, 269 Fed. App'x 545, 549 (6th Cir. 2008).

Finally, if the defendant meets its burden of articulation, "the burden shifts back to the plaintiff to show that the reason put forth by the defendant is pretextual, which can be done by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* at 704; *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). To make this showing, "the plaintiff must allege more than a dispute over the facts on which [her]

discharge was based. [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse employment action, the court must look to whether the employer can establish a reasonable reliance on the particularized facts that were before it at the time the decision was made. *Id.* at 494. The court must apply the following standard:

> In deciding whether an employer reasonably relied on the particularized facts then before it, *we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.* Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id.* (quoting *Smyth v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998)) (emphasis added); *Majewski v. Auto. Data Processing*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for [the adverse employment action], the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect").

In conducting this analysis, "[c]ourts are not intended to act as 'super personnel departments' to second guess an employer's facially legitimate business decisions." *Adams v. Tenn. Dep't of Fin. & Admin.*, 179 Fed. App'x 266, 272 (6th Cir. 2006). Thus, "the pivotal issue in . . . claims of discriminatory employment practices is whether 'the employer treated some people less favorably than others because of their race,' not whether the employer treated an employee less favorably than 'someone's general standard of equitable treatment.'" *Id.*

**III.    Application**

Grimes' claim turns on her assertion that MTH gave preferential treatment to Loyd, her Caucasian colleague suffering from MS. The parties appear to agree that the only element at issue in Grimes' *prima facie* case is whether or not Loyd and Grimes are similarly situated.

**A. Prima Facie Case**

To make out her *prima facie* case, Grimes must produce evidence which, at a minimum, establishes that, for the same or similar conduct, she was treated differently than similarly situated non-minority employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). The Sixth Circuit has articulated the standard for this analysis as follows:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects.* Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.

*Id.* at 583 (emphasis in original) (internal citations omitted) (holding that the plaintiff had not provided sufficient facts concerning alleged comparators to demonstrate that they were similarly situated); *accord Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-11 (6th Cir. 2002). Thus, Grimes is "required to prove that *all* of the relevant aspects of [her] employment situation were *nearly identical* to those of [Loyd's]." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted) (emphases added). Accordingly, in the disciplinary context, Grimes and Loyd must have engaged in acts of "comparable seriousness." *Clayton*, 281 F.3d at 611 (finding that truck drivers who, like plaintiff, had also pulled a rig away from the loading dock without insuring that back doors were closed were not "similarly situated" to the plaintiff, where resulting harm differed).

8

Here, the evidence demonstrates that, although Loyd performed similar work to Grimes, Loyd and Grimes are not similarly situated. First, it is undisputed that Loyd has seven years more experience as a nurse practitioner than Ms. Grimes and, therefore, earns a higher yearly salary. Second, it is undisputed that, at all times relevant to this lawsuit, MTH was unaware that Loyd suffered from any medical condition, including her chronic MS. Third, the parties agree that Loyd does not have any history of disciplinary infractions or job performance issues at MTH. Finally, it is undisputed that Loyd never requested that MTH make any type of accommodation for her because of MS or any other medical condition.

On the other hand, the parties agree that MTH knew of Grimes' health condition, and it is undisputed that, as a result of her condition, Grimes missed substantial periods of work in the spring of 2012. (Docket No. 15 ¶ 11; Docket No. 23 ¶ 20.) Moreover, Grimes admits that she failed to provide a physician's release to MTH, allowing her to return to work and failed to notify her employer as to a date or plan for her return to work.[3] Finally, it is undisputed that Grimes did not request (and, consequently, was not denied) any accommodation from MTH related to her condition after her return to work in April 2012.[4]

---

[3] Grimes submits that she did not present a physician's release or a plan for return to work to MTH because she was terminated while she was still under the care of her physicians and unable to return to work. (*See* Docket No. 23 ¶¶ 22-24.)

[4] Grimes admitted that she made no request for accommodation to MTH by failing to respond or otherwise object to the defendant's March 18, 2013 RFAs. (Docket No. 17, Ex. A ¶ 10.) Despite this admission, in response to the defendant's statement of undisputed facts, Grimes attempts to dispute the defendant's submission that "MTH provided every accommodation requested by Ms. Grimes." (Docket No. 22 at 5.) The plaintiff's failure to respond to the defendant's RFAs has precluded the plaintiff from disputing certain issues of material fact. The court expresses no opinion as to how it would have disposed of the Motion for Summary Judgment if it were permitted to consider the plaintiff's evidence concerning these issues.

Although Grimes and Loyd both suffered from medical ailments during their employment at MTH, the record is clear that, at all relevant times, (1) MTH was unaware of Loyd's condition, and (2) only Grimes missed a substantial amount of work without submitting a physician's release or return plan to her employer. Thus, as to Grimes' termination, Loyd and Grimes cannot be considered similarly situated for purposes of this action. *See Clayton*, 281 F.3d at 611 ("The employer's more severe treatment of more egregious circumstances cannot give rise to an inference of discrimination.") Grimes has failed to identify a non-minority comparator who was similarly situated to her in all relevant respects and, accordingly, she has failed to set forth a *prima facie* case of disparate treatment.

**B. The Burden-Shifting Analysis**

Even assuming *arguendo* that Grimes met her *prima facie* burden, summary judgment would be appropriate because Grimes has failed to demonstrate pretext.

1. Legitimate, Non-Discriminatory Reason

MTH contends that it terminated Grimes because her condition caused her to suffer mental or physical episodes that impaired her cognitive skills and, consequently, rendered Grimes incapable of properly caring for MTH's patients. MTH further avers that, on several occasions, Grimes left work during her shifts without giving notice to MTH of when she would return. (Docket Nos. 15, 19.) As Dr. Arons, Grimes' supervisor, submitted in his declaration, MTH terminated Grimes because "patient care and safety are of utmost concern to MTH." (Docket No. 15 ¶ 12.) The court finds that the defendant has satisfied its burden of proffering a legitimate, non-discriminatory reason for Grimes' termination.

2. Pretext

The burden therefore shifts back to the plaintiff to establish, by a preponderance of the evidence, that the defendant's proffered reason is pretextual or unworthy of belief. Grimes argues that race played a motivating factor in the decision to terminate her. In support of this contention, Grimes submits only her self-serving declaration in which she, with no supporting evidence, "contend[s] vigorously that Dr. Arons' stated reasons for dismissing [her] . . . are pretextual." It is well-settled that Grimes' declaration alone is insufficient to meet her burden as to pretext. *See Adams*, 179 Fed. App'x 266, 274 (6th Cir. 2006) (upholding district court grant of summary judgment where, by reference only to the plaintiff's self-serving deposition testimony and affidavits, the plaintiff "baldly assert[ed]" that the employer's proffered reasons for termination were pretextual); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (stating that "mere personal beliefs, conjecture and speculation are insufficient" to support an inference of pretext.") At most, Grimes' declaration demonstrates that she disagrees with Dr. Arons' opinion as to her ability to do her job. Moreover, Grimes' bare assertion as to pretext is unsupported by the record. Instead, the record supports MTH's justification for Grimes' dismissal, as it is undisputed that Grimes was absent from work on several occasions and failed to notify her employer regarding her plans to return to her job.

Even viewing the evidence in a light most favorable to the plaintiff, Grimes has failed to present evidence that creates a genuine issue of material fact such that a reasonable fact-finder could find in her favor with respect to the question of pretext. Accordingly, even assuming that Grimes satisfied her *prima facie* burden, summary judgment for MTH is appropriate.

## **CONCLUSION**

For the reasons stated herein, MTH's motion for summary judgment on all claims by Grimes will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge